UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| TIMOTHY ETTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | _____ |
| v. | ) | |
| | ) | Honorable _____ |
| THE PRUDENTIAL INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PRELIMINARY STATEMENT**

1.     Plaintiff TIMOTHY ETTER, hereinafter referred to as "Plaintiff," brings this ERISA action against THE PRUDENTIAL INSURANCE COMPANY OF AMERICA Group Welfare Benefits Plan, in its capacity as Administrator of the Motorist Mutual Insurance Company Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of his employment with Encova Insurance.

**PARTIES**

2.     Plaintiff is a citizen and resident of Ferdinand, Indiana.

3.     Defendant is a properly organized business entity doing business in the State of Indiana.

4.    The disability plan at issue in the case at bar was funded and administered by Defendant.

5.    Defendant is a business entity doing business in the Southern District of Indiana.  Defendant may be served with process by serving its registered agent, CT Corporation, 334 N. Senate Avenue, Indianapolis, IN  46204.

## JURISDICTION AND VENUE

6.    This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question.  Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7.    Venue in the Southern District of Indiana is proper by virtue of Defendant doing business in the Southern District of Indiana.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*)   Here, Defendant is "found" within the Southern District of Indiana, as it does business here, and the court has personal

jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8.      At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. G-52068-OH.

9.      Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Encova Insurance, with coverage beginning on January 1, 2018.

10.     Said policy became effective January 1, 2018.

11.     At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12.     At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14.     Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15.     Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. G-52068-OH issued by Defendant.

16.     Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17.    Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18.    Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19.    In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20.    Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21.    In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.    Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23.    Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24.    When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result

in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25.    Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i.    Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);

ii.    Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);

iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);

iv.    Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

v.    Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);

vi.    Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);

vii.    Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

viii.    Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);

ix.    Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

x.    Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xi.    Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii.    Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii.    Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26. Defendant's violations of the regulations were not inadvertent or harmless.

27. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

29. Plaintiff is a 58-year-old man previously employed by Encova Insurance as a "Inside Material Damage Specialist II."

30. Inside Material Damage Specialist II is classified under the Dictionary of Occupational Titles as having a Sedentary exertional level. This occupation also has an SVP of 7 and is skilled work.

31. This occupation was very demanding in that it required Plaintiff to review vehicle damage claims, write appraisals and/or review appraisals from body shops, preferred programs, smart phone apps, independent appraisers, company appraisers and other sources; handle automobile material damage claims in compliance with Encova Claims department policies for contact, communication, cycle time, coverage verification, evaluation/negotiation and resolution of the file; negotiate, settle and pay vehicle damage and total loss claims; provide advice and recommendations to other material damage appraisers and claims resolution specialists on the material damage aspect of a claim; handle salvage disposal on vehicles that are considered total losses; handle/monitor title procurement on vehicles/equipment considered total losses; may be required to testify as to material damage issues in lawsuits involving vehicle damage;

capable of reviewing and writing estimates while meeting acceptable productivity, turnaround and quality standards; assist in catastrophe claims handling throughout the company operating territory; handle rental claims; serve as a member of claims and other company integrated teams as assigned; and model the leadership behaviors outlined in the Vision.

32.    Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on May 26, 2021.

33.    Plaintiff alleges that he became disabled on May 27, 2021.

34.    Plaintiff filed for short-term disability benefits with Defendant.

35.    Short-term disability benefits were approved, from June 3, 2021 through August 25, 2021.

36.    Plaintiff filed for long-term disability benefits through the Plan administered by the Defendant.

37.    The Plan defines "Disability" as follows:

*"You are disabled when Prudential determines that:*

- *you are unable to perform the* **material and substantial duties** *of your* **regular occupation** *due to your* **sickness** *or* **injury***; and*

- *you are under the* **regular care** *of a* **doctor***; and*

- *you have a 20% or more loss in your* **monthly earnings** *due to that sickness or injury.*

*After 36 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:*

- *you are unable to perform the duties of any* **gainful occupation** *for which you are reasonably fitted by education, training or experience; and*

- *you are under the regular care of a doctor.*

7

*The loss of a professional or occupational license or certification does not, in itself, constitute disability.*

*Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:*

- *your doctors; and*

- *doctors, other medical practitioners or vocational experts of our choice.*

*When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim."*

38.    The Plan defines "**Regular Occupation**" as follows:

"***Regular Occupation****" means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.*"

39.    The Plan defines "**Gainful Occupation**" as follows:

"***Gainful Occupation****" means an occupation including self-employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:*

    *60% of your* **indexed monthly earnings** *if you are working; or*

    *67.00% of your monthly earnings if you are not working.*"

40.    Long-term disability benefits were denied.

41.    The Plan provides for monthly benefits of $4,568.61.

42.    On August 25, 2021, Defendant denied Plaintiff's long-term disability benefits.

43.    Defendant's denial letter said they, "did not find any evidence of disability

8

or need for limitations" under the Own Occupation definition and allowed Plaintiff 180 days to appeal this decision.

44.    Defendant's denial letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of his own or any occupation related to his medical conditions.

45.    Defendant's denial letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect his appeal.

46.    Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

47.    Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

48.    Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of both his own and any other occupation as defined by the terms of the Plan.

49.    Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

50.    Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

51.    On or about June 23, 2021, Defendant's internal consultant, Judith O'Connor, RN, BSN, performed a paper review of Plaintiff's claim file.

52.    On or about August 25, 2021, Defendant's internal consultant, Elana Mendelssohn-Garam Psy.D., clinical psychology and neuropsychology, performed a peer review of Plaintiff's claim file.

53.    On or about March 22, 2022, Defendant's paid consultant, David Hoenig, M.D., neurology, performed a peer review of Plaintiff's claim file.

54.    On or about March 22, 2022, Defendant's paid consultant, Julie E. Keaveney, Psy.D., ABPP, clinical neuropsychology, performed a peer review of Plaintiff's claim file.

55.    Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a.    The reviewers' opinion was infected by conflict and bias;

b.    The reviewers' conclusions lack foundation and are conclusory;

c.    The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.    The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e.    The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.    The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.    The reviewers failed to acknowledge that medications neither effectively resolved his pain nor were appropriate for long-term treatment of Plaintiff;

h.    The reviewers based their opinions on summary reports of other underqualified opinions; and

i.    The reviewers' conclusions were inconsistent with the weight of the evidence.

56.    Defendant's consultants completed their reports without examining Plaintiff.

57.    Defendant notified Plaintiff that Defendant upheld its original decision to deny Plaintiff's claim for long term disability benefits.

58.    Defendant also notified Plaintiff that Plaintiff had exhausted his administrative remedies.

59.    Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

60.    The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

61.    A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

62.    More information promotes accurate claims assessment.

63.    Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

64.    Plaintiff has now exhausted his administrative remedies, and his/her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

65.    Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

66.    Plaintiff suffers from frontotemporal dementia (FTD).

67.    Treating physicians document continued chronic pain, as well as weakness.

68.    Plaintiff's treating physicians have opined that Plaintiff is unable to work.

69.    Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

70.    Plaintiff's multiple disorders have resulted in restrictions in activity and have significantly curtailed his ability to engage in any form of exertional activity.

71.    Physicians have prescribed Plaintiff with multiple medications, in an effort to address his multiple symptoms.

72.    However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

73.    Plaintiff's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

74.    Plaintiff's medications cause additional side effects in the form of sedation

and cognitive difficulties.

75.    The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

76.    As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

77.    However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

78.    At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

79.    Defendant's determination was influenced by its conflict of interest.

80.    Defendant's reviewing experts are not impartial.

81.    Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

82.    Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

83.    Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

84.    Upon information and belief, Defendant's reviewing experts receive

13

financial incentive to proffer opinions aiding in Defendant's denial of claims.

85.    Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

86.    Plaintiff incorporates those allegations contained in paragraphs 1 through 85 as though set forth at length herein.

87.    Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a.    Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

b.    Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c.    Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d.    Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

88.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 87 above.

14

89.    By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A.    Grant Plaintiff declaratory relief, finding that he is entitled to all past due long-term disability benefits yet unpaid;

B.    Order Defendant to pay past due long-term disability benefits retroactive to August 27, 2021 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.    Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.    Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.    For such other relief as may be deemed just and proper by the Court.

November 8, 2023

Respectfully submitted,

By: /s/ Melissa Davidson
     Hankey, Marks & Crider
     Indiana Bar 26068-49
     429 E. Vermont Street, Suite 200
     Indianapolis, IN 46202
     PH: 317-599-4111
     Fax: 317-634-9818
     mdavidson@hankeylaw.com

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.

By:    /s/ Madison Tate Donaldson
     Madison Tate Donaldson
        Tex. Bar No. 24105812
        Fed. I.D. No. 3151467
        madison@marcwhitehead.com
     403 Heights Boulevard
     Houston, Texas 77007
     Telephone: 713-228-8888
     Facsimile: 713-225-0940
     ATTORNEY-IN-CHARGE
     FOR PLAINTIFF,
     TIMOTHY ETTER

16